UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA MAGGI, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>INTERNATIONAL TRAVEL NETWORK, LLC,<br><br>            Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Sandra Maggi ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against International Travel Network, LLC ("ITN" or "Defendant"), and upon personal knowledge as to Plaintiff's own acts and experiences, and on information and belief as to all other matters, including based on an investigation conducted by counsel, complains and alleges as follows:

## NATURE OF THE ACTION

1.      ITN is a travel agency that sells airline tickets and travel packages to consumers.

2.      For an additional fee, ITN also offers its customers a form of trip protection coverage under the terms of its standardized Travel Care Service agreement.

3.      The price ITN charges for trip protection coverage under the Travel Care Service agreement is significantly more than the average cost of a travel insurance policy.

4.      The Travel Care Service agreement contains a bolded, all-caps header on the first page that reads: "WISE DECISION – YOUR TRIP IS PROTECTED!"

5. Under the terms of the Travel Care Service agreement, ITN guarantees, among other things: (a) "a 100% refund of fully unused tickets for traveler(s) hospitalized at the time of scheduled departure," (b) "a 50% refund of fully unused ticket[s] for traveler(s) unable to take their trip due to sickness," and (c) those same "services" to any travel "companion" that "also purchased a ticket and Travel Care Service with ITN." In that way, the Travel Care Service agreement—which was sold as a premium trip "protection" product at a price that was significantly higher than the average cost of a travel insurance policy—packaged "companion" refunds with the primary refunds available to the sick or hospitalized traveler.

6. Plaintiff is a New York resident who purchased airline tickets from ITN for herself and her husband in December 2022.

7. Plaintiff also purchased trip protection coverage for both her and her husband under the terms of the Travel Care Service agreement.

8. Shortly before their scheduled departure, Plaintiff's husband experienced chest pain and shortness of breath and went in to see his cardiac physicians. The physicians determined that Plaintiff's husband needed unexpected near-term heart surgery and that he could not travel as planned.

9. Plaintiff timely requested that ITN refund 50% of the cost of her and her husband's tickets pursuant to the terms of the Travel Care Service agreement.

10. ITN agreed to refund 50% of the cost of Plaintiff's husband's ticket but refused to refund any portion of the cost of Plaintiff's ticket.

11. According to ITN, Plaintiff was not entitled to a refund because the Travel Care Service agreement is "not insurance" and the refunds available thereunder "appl[y] only to the sick passenger."

12.     As described more fully below, ITN: (a) deceptively markets and sells the Travel Care Service agreement as a premium travel "protection" product that includes companion refunds; (b) systematically breaches the Travel Care Service agreement by failing to pay companion refunds; and (c) falsely and deceptively tells consumers that the Travel Care Service agreement is "not insurance."

13.     Through this Complaint, Plaintiff brings five causes of action:

a.     **Count 1: Breach of Contract**. Under the terms of the Travel Care Service Agreement, Plaintiff is entitled to a 50% refund of the cost of her airline ticket because, among other reasons, her husband qualified for and received a 50% refund and Plaintiff was a travel "companion" that "also purchased a ticket and Travel Care Service with ITN." ITN's refusal to refund 50% of the cost of Plaintiff's airline ticket was a material breach of the Travel Care Service agreement.

b.     **Count 2: Unjust Enrichment**. ITN has a practice of marketing and selling a premium travel "protection" product that promises companion refunds in exchange for a fee, while omitting that, in practice, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested. ITN's refusal to refund 50% of the cost of Plaintiff's airline ticket unjustly enriched ITN at Plaintiff's expense.

c.     **Count 3: Violation of New York General Business Law § 349**. ITN's practice of marketing and selling a premium travel "protection" agreement that promises companion refunds, while omitting that, in practice, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested, is deceptive and unlawful under New York consumer protection law.

      d.    **Counts 4-5: Violation of New York General Business Law §§ 349 and 350**. Insurance is a contract whereby one party (the "insurer") is obligated to confer a benefit of pecuniary value upon another party (the "insured") upon the happening of a fortuitous event. The Travel Care Service agreement is plainly an insurance contract, as under its terms ITN is obligated to confer a benefit of pecuniary value upon covered travelers in the event they are unexpectedly hospitalized or sick and cannot travel and are not made whole by the airline. During the relevant time period, ITN did not have an active license to sell insurance in New York. Accordingly, ITN falsely and deceptively told consumers that the Travel Care Service agreement is "not insurance," but rather a "services" agreement. ITN sold this product to consumers with none of the regulatory disclosures and protections required of insurance products—such as the requirement that an insurer maintain adequate reserves—at prices far exceeding the average cost of travel insurance. In reality, the Travel Care Service agreement was worth far less than other travel insurance products, as ITN had an undisclosed and systematic practice of improperly denying refunds precisely on the grounds that the agreement was "not insurance."

14.    Plaintiff brings this action, individually and on behalf of all others similarly situated (the "Classes," as defined below), for damages and injunctive and other equitable relief.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act because: (1) there are 100 or more putative class members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

16.     This Court has personal jurisdiction over Defendant because it is incorporated in and headquartered in this District, has substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of Delaware.

17.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because Defendant is incorporated in and has its principal place of business in this District and because Defendant is subject to the personal jurisdiction of this Court.

## PARTIES

18.     Plaintiff Sandra Maggi is a resident of Utica, New York.

19.     Defendant ITN is a Delaware limited liability company with its headquarters located at 1000 N West Street, Suite 1200, Wilmington, Delaware.

## FACTUAL ALLEGATIONS

**A.     ITN and Its Affiliates Sell Hundreds Of Thousands Of Airline Tickets Per Year.**

20.     ITN is a travel agency that sells airline tickets and travel packages to consumers.

21.     ITN owns and operates several travel brands, including "ASAP Tickets" and "asaptickets.com."[1]

22.     ITN sells over 50,000 air tickets and package holidays monthly.

23.     ITN is a partner and an official distributor of over 70 airlines and is the seventh-largest consolidator in the United States.

---

[1] https://www.asaptickets.com/about

24.     In 2021, ITN was operated by Dyninno Travel, which was a division of Dynamic Innovations Limited (d/b/a "Dyninno").[2]

25.     In 2021, Dyninno Travel (a) issued at least 420,000 unique airline tickets, (b) had gross bookings—calculated as the total dollar value of all travel services booked by its customers net of cancellations, generally inclusive of taxes and fees—of $480 million, and (c) nearly doubled the number of "upsells" (e.g., Travel Care Service agreements) compared to the calendar year 2020.[3]

26.     In 2022, Dyninno Travel was rebranded as "Trevolution Group," which is a division of Dynamic Innovations Limited (d/b/a "Dyninno").[4]

27.     ITN has been operated by Trevolution Group since 2022.[5]

28.     In 2022, Trevolution Group (a) issued at least 730,000 unique airline tickets, (b) had gross bookings of $936 million, and (c) increased the number of auxiliary products and services (e.g., Travel Care Service agreements) sold by 78% compared to 2021.[6]

29.     Trevolution Group internally predicted that gross booking would increase by 56% in 2023 compared to 2022.[7]

---

[2] https://dyninno.com/en/articles/dyninno-travel-gross-bookings-up-77-in-2021/

[3] https://dyninno.com/en/articles/dyninno-travel-gross-bookings-up-77-in-2021/

[4] https://trevolution.group/en/about/

[5] https://dyninno.com/en/articles/trevolution-group-takes-off-record-setting-annual-performance/

[6] https://dyninno.com/en/articles/trevolution-group-takes-off-record-setting-annual-performance/

[7] https://dyninno.com/en/articles/trevolution-group-takes-off-record-setting-annual-performance/

30.     In the first half of 2023, Trevolution Group (a) issued over 500,000 airline tickets, and (b) had gross bookings of $620 million.[8]

**B.     Many Travelers Purchase Travel Insurance To Cover The Cost Of Unexpected Trip Cancellations.**

31.     Travel insurance is insurance coverage for certain risks incident to planned travel, including, but not limited to, cancellation or interruption of a trip.

32.     According to the National Association of Insurance Commissioners, "[t]ravel insurance gives consumers peace of mind when booking a trip that they will be reimbursed for part of, or all their expenses should an undesirable event occur that prompts cancellation or interruption of the trip."[9]

33.     Many travelers purchase travel insurance to insure against the risk of trip cancellation due to sickness or injury.

34.     According to the National Association of Insurance Commissioners, the most popular type of travel insurance purchased by consumers is for trip cancellation, interruption, or delay, which reimburses the insured for "pre-paid and non-refundable travel expenses if an individual is prevented from taking all or part of their trip."[10]

---

[8] https://trevolution.group/en/about/

[9] https://content.naic.org/cipr-topics/travel-insurance

[10] https://content.naic.org/cipr-topics/travel-insurance

35.     The USA Today reported that travel insurance typically costs between 5% and 6% of the total trip cost.[11] The National Association of Insurance Commissioners similarly reported that travel insurance typically costs between 4-8% of the total trip price.[12]

36.     A recent survey of 971 U.S. adult travelers found that: (a) approximately 38% of travelers purchased travel insurance covering their trip; (b) the majority of insured travelers purchased their policy through a travel provider, and (c) the average cost of travel insurance typically falls between $80 and $160 for a $2,000 trip.[13]

**C.     ITN Offers Trip Protection Coverage Under The Terms Of The Travel Care Service Agreement.**

37.     ITN offers its customers a form of trip protection coverage under the terms of its standardized Travel Care Service agreement. *See* **Exhibit A** (Travel Care Service agreement entered into between Plaintiff and ITN).

38.     ITN charges customers an additional fee for trip protection coverage under the terms of the Travel Care Service agreement.

39.     The fee ITN charges customers for trip protection coverage under the Travel Care Service agreement totals, on average, approximately 9-10% of the cost of the underlying travel.

40.     The Travel Care Service agreement is a contract between ITN and each customer that purchases trip protection coverage under the Travel Care Service agreement.

---

[11]     https://www.usatoday.com/money/blueprint/travel-insurance/travel-insurance-vs-trip-protection-whats-difference/

[12] https://content.naic.org/cipr-topics/travel-insurance

[13]     https://www.businessinsider.com/personal-finance/travel-insurance-statistics-winter-2023-1#:~:text=Why%20people%20buy%20travel%20insurance,any%20reason%20insurance%20(CFAR)

41.     The Travel Care Service agreement contains a bolded, all-caps header on the first page that reads: "WISE DECISION – YOUR TRIP IS PROTECTED!" Ex. A at 1.

42.     Under the terms of the Travel Care Service agreement, ITN agrees (a) to "work with the airline on [the covered traveler's] behalf to get compensation/refund for [certain] specified events that may occur during [the traveler's] trip," and (b) if "for any reason" the airline does not provide the traveler the refund(s) described in the Travel Care Service agreement, "ITN will cover such refunds" and pay them to the traveler out of its own pocket. Ex. A at 1.

43.     ITN describes the Travel Care Service agreement to consumers as: "ITN's service to assist you in getting a refund from the airline in various circumstances that can occur during your trip as well as certain other additional services."

44.     The "additional services" ITN provides under the Travel Care Service agreement include guaranteeing payment of the refunds described in the Travel Care Service agreement.

45.     Under the terms of the Travel Care Service agreement, ITN agrees to provide these trip protection "services" to (a) "traveler(s) hospitalized at the time of scheduled departure," (b) "traveler(s) unable to take their trip due to sickness," and (c) travel "companions" that "have also purchased a ticket and Travel Care Service with ITN." Ex. A at 1-2.

46.     Under the terms of the Travel Care Service agreement:

   a.   "ITN Travel Care Service allows a 100% refund of fully unused tickets for traveler(s) hospitalized at the time of scheduled departure. The traveler(s) must provide his / her hospitalization certificate to ITN and cancel the reservation before the scheduled departure." Ex. A at 1.

   b.   "Travel Care Service also allows a 50% refund of fully unused ticket[s] for traveler(s) unable to take their trip due to sickness – the traveler(s) must provide

9

a doctor's note to ITN and cancel the reservation before the scheduled departure." Ex. A at 1.

    c.  "Any service available under the Travel Care Service is personal to the passenger and does not apply to his/her companions ***unless such companions have also purchased a ticket and Travel Care Service with ITN***" (the "Companion Clause"). Ex. A at 2 (emphasis added).

47.    The Companion Clause describes the circumstances under which the "services" (e.g., refund guarantees) available to a covered traveler are *not* "personal" to the covered traveler and instead extend to the travel companions covered under the same Travel Care Service agreement. In that way, Travel Care Service agreement—which was sold as a premium trip "protection" product at a price that was significantly higher than the average cost of a travel insurance policy—packaged "companion" refunds with the primary refunds available to the sick or hospitalized traveler.

48.    Under the terms of the Travel Care Service agreement, ITN guarantees that (a) covered travelers who are hospitalized or sick at the time of departure will receive a 100% or 50% refund (referred to in this complaint as a "Primary Refund"), respectively, and (b) in the event a covered traveler is entitled to a Primary Refund, travel "companions" that "also purchased a ticket and Travel Care Service with ITN" are also entitled to a commensurate refund (referred to in this complaint as a "Companion Refund").

49.    The terms of each Travel Care Service agreement issued by ITN are standardized, presented to the customer on a take-it-or-leave-it basis, and are not individually negotiated between ITN and each consumer.

50.     The terms of the Travel Care Service agreement described in Paragraph 46 appear in identical or materially similar form in every Travel Care Service agreement issued by ITN since at least 2020.

**D.     The Travel Care Service Agreement Is A Consumer-Oriented Product.**

51.     ITN markets trip protection coverage under the Travel Care Service agreement directly to consumers.

52.     As a standard business practice, ITN offers to sell trip protection coverage under the Travel Care Service agreement to all U.S. customers that purchase airline tickets from ITN.

53.     When customers purchase airline tickets from ITN over the phone, an ITN agent verbally offers to sell trip protection coverage under the Travel Care Service agreement to the customer.

54.     When customers purchase airline tickets from ITN online, including on asaptickets.com, ITN's website "recommends" that the customer purchase trip protection coverage under the Travel Care Service agreement, and requires the customer to opt in or out of such coverage as part of the standardized purchase process, as shown in the following exemplar screenshots (which were posted by another traveler online)[14]:



<hr />

[14]https://cdn0.opinion-corp.com/review-
    media/pdf/2321641/ba2960c4864e675b399e51c189bc7e39.pdf



55.     ITN markets the terms of the Travel Care Service agreement at the point of sale, including the terms described in Paragraph 46, as shown in the following exemplar screenshots (which were posted by another traveler online)[15]:



---

[15]https://cdn0.opinion-corp.com/review-
    media/pdf/2321641/ba2960c4864e675b399e51c189bc7e39.pdf

**E.     Plaintiff Purchased Airline Tickets From ITN And Travel Protection Coverage Under The Terms Of The Travel Care Service Agreement.**

56.     Plaintiff's son serves in the U.S. military and, in December 2022, was stationed in Italy.

57.     Plaintiff and her husband intended to take a trip to Italy in December 2022 to visit their son prior to his transfer to another duty station.

58.     Plaintiff contacted ITN via telephone and purchased airline tickets for herself and her husband.

59.     Plaintiff paid ITN $978.00 for her airline ticket, and $978.00 for her husband's airline ticket.

60.     Plaintiff separately paid ITN $178.90 for trip protection coverage under the terms of the Travel Care Service agreement. A copy of the Travel Care Service agreement entered into between Plaintiff and ITN is attached hereto as **Exhibit A.**

61.     The amount Plaintiff paid for trip protection coverage under the terms of the Travel Care Service agreement ($178.90 for coverage of airline tickets costing $1,956, *i.e.*, 9.1% of the underlying travel) was higher than the average cost of travel insurance (which is between 5% and 6% of the total trip cost[16]).

62.     The Travel Care Service agreement covered both Plaintiff and her husband.  Ex. A at 1.

63.     Plaintiff's and her husband's outbound flight was scheduled to depart on December 12, 2022, and their return flight home was scheduled to occur on December 27, 2022.

---

[16]     https://www.usatoday.com/money/blueprint/travel-insurance/travel-insurance-vs-trip-protection-whats-difference/ ("Travel insurance costs an average of 5% and 6% of the total trip cost.").

**F.      ITN Materially Breached The Travel Care Service Agreement By Failing To Provide Plaintiff With A Covered Refund.**

64.      In the lead up to their scheduled departure, Plaintiff's husband experienced chest pain and shortness of breath and, accordingly, made an appointment with his heart doctor.

65.      On December 9, 2022, Plaintiff's husband underwent a cardiac catheterization. His physician determined that he needed near-term open-heart surgery and thus could not travel to Italy as planned.

66.      On December 9, 2022, Plaintiff contacted ITN, canceled her and her husband's trip, and requested a 50% refund of each ticket purchased pursuant to the terms of the Travel Care Service agreement.

67.      Plaintiff canceled her and her husband's travel before their scheduled departure.

68.      Plaintiff provided multiple doctors' notes to ITN, including: (a) a December 9, 2022 letter from Central New York Cardiology stating that Plaintiff's husband "cannot travel as planned due to an unexpected need for cardiac surgery," (b) a December 19, 2022 letter from St. Joseph's Physicians Cardiac Surgery stating that Plaintiff's husband "had a heart cath on 12/9/22 due to chest pain" and "will need open heart surgery and be unable to travel," and that Plaintiff "is also unable to travel as she is needed to care for her husband," and (c) a January 17, 2023 letter from St. Joseph's Physicians stating that Plaintiff's husband "was hospitalized and underwent open heart cardiac surgery on January 3, 2023" and "was therefore under acute cardiac care and medically unable to travel."

69.      Plaintiff's husband was unable to take the scheduled trip due to sickness.

70.      ITN agreed to refund 50% of the cost of Plaintiff's husband's ticket.

71.      Plaintiff was a travel companion that also purchased a ticket and Travel Care Service with ITN.

72.     ITN refused to refund any portion of Plaintiff's ticket.

73.     Under the terms of the Travel Care Service Agreement, Plaintiff is entitled to a 50% refund of her ticket price because, among other reasons, her husband qualified for and received a 50% Primary Refund and Plaintiff was a travel "companion" that "also purchased a ticket and Travel Care Service with ITN" (Ex. A at 2).

74.     In its message to Plaintiff denying her requested refund, ITN stated: "Since you have activated our Travel Care Service, we have provided a 50% refund from our side to the passenger who was unable to make the trip due to illness. This refund, again, applied only to the sick passenger, that is why we can not (sic) provide you with the refund for the second passenger."

75.     ITN's refusal to refund 50% of the price of Plaintiff's ticket was a material breach of the Travel Care Service Agreement.

76.     As a result of ITN's breach, Plaintiff suffered damages.

77.     Upon information and belief, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested. For example, on May 12, 2023, another consumer filed a complaint with the Better Business Bureau, stating, in part: "[I sought a] Refund of my 3 plane tickets valued at $3704.00. … In that amount are three plane tickets plus insurance (for cancellations) of $169/ticket … My husband was hospitalized last Feb to Mar 2023 and was advised by his primary doctor not to travel with attached doctor's note. I was refunded $1604.00 only out of $3704.00, I am requesting a full refund, the $2100.00 outstanding." On May 17, 2023, ITN responded to the customer's complaint and stated: "Unfortunately the carrier has only decided to refund 2 of the 3 passengers. Their refund policy due to medical reasons does not extend to all passengers on reservation. We, as a travel agency are only able to assist in strong accordance with the airline's rules and regulations." On May 21, 2023, the consumer

responded to ITN's May 17th response and stated: "We purchased insurance policy for travel interruptions and we were unable to utilize the tickets because of medical reasons. And if one person couldnt go, no one would be able to depart, hence the travel insurance purchase. … The insurance we purchased should be honored and full refund should be issued." On May 26, 2023, ITN responded to the consumer's response and stated: "We have assisted the customer in accordance with the fare rules. We have also informed the client that the carrier has denied a refund fro (sic) the 3rd passenger. We, as a travel agency are unable to process a refund if the airline does not allow it. [The] Airline's refund policy does not extend to all passengers."[17]

### G. ITN Falsely And Deceptively Advertised The Trave Care Service Agreement As "Not Insurance" And Improperly Denied Refunds On Those Grounds.

78.     Airlines do not always provide travelers with the refunds described in the Travel Care Service agreement.

79.     ITN has quantified the risk that an airline will fail to provide travelers with the refunds described in the Travel Care Service agreement.

80.     Under the terms of the Travel Care Service agreement, ITN assumes the risk of airline non-payment by agreeing that, if "for any reason" the airline does not provide "the refunds covered by the Travel Care Service agreement," ITN "will cover such refunds as [the covered traveler's] special damages." Ex A at 1.

81.     Insurance is a contract whereby one (the "insurer") undertakes to pay or indemnify another (the "insured") for loss from certain specified risks.

82.     For example, under New York law:

---

[17]     https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=11

a.      An "insurance contract" is "any agreement or other transaction whereby one party, the 'insurer,' is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary,' dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event." N.Y. Ins. Law § 1101.

b.      Travel insurance, including insurance for the cancellation or interruption of a trip, is a regulated type of insurance coverage.[18]

83.     Similarly, under Delaware law:

a.      "Insurance" is "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, called "risks," or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies or to act as surety." Del. Code Ann. tit. 18, § 102.

b.      "Travel insurance" is a regulated type of insurance coverage that includes "insurance coverage for personal risks incident to planned travel, including but not limited to … [i]nterruption or cancellation of trip or event." Del. Code Ann. tit. 18 § 1702.

84.     The Travel Care Service agreement is a contract under which ITN is obligated to confer a benefit of pecuniary value upon covered travelers dependent upon the happening of a fortuitous event—i.e., in the event that the airline does not provide the covered traveler a refund equivalent to the applicable refund described in the Travel Care Service agreement.

85.     The Travel Care Service agreement is a contract under which ITN agrees to pay covered travelers as to loss from a specified risk—i.e., the risk that the airline does not provide the

---

[18] https://www.dfs.ny.gov/insurance/ogco2010/rg100206.htm

covered traveler a refund equivalent to the applicable refund described in the Travel Care Service agreement.

86.     The Travel Care Service agreement is a contract under which ITN agrees to pay covered travelers a specified amount or determinable benefit in connection with an ascertainable risk contingency—i.e., the risk that the airline does not provide the covered traveler a refund equivalent to the applicable refund described in the Travel Care Service agreement.

87.     The Travel Care Service agreement is an insurance contract.

88.     It is unlawful for companies to sell insurance in New York without a license. N.Y. Ins. Law § 1102.

89.     During the relevant time period, ITN was not licensed to sell insurance in New York.

90.     ITN first applied for and was granted a license to function as an insurance agent in New York in August 2023, but that license remains inactive pending ITN's association with a licensed insurance producer.[19]



---

[19] https://myportal.dfs.ny.gov/nylinxext/elprsmain.alice

91.     ITN tells consumers that the Travel Care Service agreement is "not an insurance policy," including as shown in the following exemplar screenshots (which were posted by another traveler online)[20]:





92.     The standardized terms of the Travel Care Service agreement, which were drafted by ITN and not negotiated with individual customers, state that: "ITN Travel Care Service is not an insurance policy but an (sic) ITN's service to assist you in getting a refund from the airline in various circumstances that can occur during your trip as well as certain other additional services." Ex A at 2.

---

[20]https://cdn0.opinion-corp.com/review-
media/pdf/2321641/ba2960c4864e675b399e51c189bc7e39.pdf

93.     The amount ITN charges for trip protection "services" under the Travel Care Service agreement (approximately 9-10% of the cost underlying travel) is higher than the average cost of travel insurance (which typically falls between 5-6% of the cost of the underlying travel).[21]

94.     ITN markets the Travel Care Service agreement as a travel "services" agreement.

95.     In reality, the Travel Care Service agreement is an overpriced travel insurance product sold by an unlicensed seller with none of the regulatory disclosures and protections required of insurance products, such as the requirement that an insurer maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims.

96.     Indeed, ITN regularly denies refunds covered under the Travel Care Services agreement precisely on the grounds that it is "not insurance."

97.     During the course of Plaintiff's discussions with ITN regarding her entitlement to a refund under the Travel Care Service agreement, ITN told Plaintiff that one reason she was not entitled to a refund under the Travel Care Service agreement is that the agreement is "not insurance."

98.     ITN's assertion that the Travel Care Service agreement is "not insurance" is false because the Travel Care Service agreement is an insurance contract under applicable law.

99.     ITN's practice of denying refunds on the grounds that the Travel Care Service agreement is "not insurance" is deceptive because the Travel Care Service agreement is a binding contract between ITN and every customer who purchases it, and it is misleading to suggest to lay consumers that a traveler's entitlement to a covered refund depends on the insurance nature of the agreement.

---

[21]     https://www.usatoday.com/money/blueprint/travel-insurance/travel-insurance-vs-trip-protection-whats-difference/ ("Travel insurance costs an average of 5% and 6% of the total trip cost.")

100.    Upon information and belief, ITN trains its representatives to tell consumers seeking a refund under the Travel Care Service agreement that the agreement is "not insurance," and systematically denies refunds covered under the Travel Care Service agreement on the grounds that the agreement is "not insurance."  For example:

a.    On January 16, 2023, a consumer filed a complaint against ASAP Tickets with the Better Business Bureau, stating, part: "I purchased plane ticket on Nov 25, 2022 with a Ticket Protection worth and extra $338.90. … I was enticed to get the Ticket Protection as extra because that will protect me from financial burden if ever my passport will not arrived on time to travel. … Paisley (the agent) misrepresented by selling insurance product (Ticket Protection) even though it has no value on the welfare of the traveler…. ASAP should stop selling insurance product under the guise of Ticket Protection because they are not license to do so …." On January 19, 2023, ITN responded to the customer's complaint and stated, in part: "Please note that [Travel Care Service] is a product of our company that gives the customer some additional benefits, however it's not an insurance plan."[22]

b.    On May 3, 2023, a consumer filed a complaint with the Better Business Bureau, stating, in part: "[ASAP Tickets] offered a travel protection for easy refund for whatever reason, he said and I purchased so in case my mother or brother gets sick and not able to make the trip. … So close to the date of the flight my brother got ill … So I am trying to file for the refund through the insurance but apparently the insurance was not an actual insurance. I find it fraudulent to offer an insurance that is not an insurance but a fee for them in case they need to change or try

---

[22]    https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=11

to refund a non refundable ticket, now they kept sending updates that the airline is taking time to respond."[23]

      c.    On May 7, 2023, a consumer filed a complaint with the Better Business Bureau, stating, in part: "I purchased these tickets from ASAP in November 2022 travel March 2023. While purchasing the tickets the agent told me that rebooking is free for any reason just add the travel protection insurance for additional amount." On May 16, 2023, ITN responded to the consumers complaint and stated, in part: "It is important to note that the ITN Processing fee was waived due to the activation of Travel [Care Service] which is not insurance." On May 18, 2023, the consumer responded to ITN's response and stated, in part: "I am rejecting this response because: First off the agent that sold me the ticket told me that the Travel [Care Service] is an insurance that no matter what I am not to pay rebooking the ticket just in case we need to rebook them. And of course now ASAP is insisting its not an insurance."[24]

      d.    On August 19, 2023, a consumer filed a complaint with the Better Business Bureau, stating, in part: "I obtained a package for my daughter to fly … one way for $669.95 from agent of ASAP Tickets … It included travel protection insurance." On August 22, 2023, ITN responded to the complaint and stated: "[the Travel Care service agreement] is not an insurance policy but an (sic) ITN's service to assist in getting a refund from the airline in various circumstances that can occur during your trip as well as certain other additional services." On August 22, 2023, the consumer responded to ITN's response and stated: "I bought the ticket package from ASAP agent. At the time I was told that for an extra $69.95 I will have coverages

---

[23]     https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=12

[24]     https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=12

and my trip and luggage was protected and there was no need to buy additional insurance. I did

pay that extra charge. She and I understood to be a policy and not an assistance service. I do not

need to pay to have someone assisting me. … I checked again and again with their agents. They

call it insurance!  Assistance would not sell."[25]

      e.     On August 29, 2023, a consumer filed a complaint with the Better Business

Bureau, stating, in part: "June 21st of this year I paid asap tickets $1659.70 for round trip flights

…. I specifically asked for insurance which was $149.95 of the bill ... after purchase I started

having chronic gastrointestinal problems and am under the care of [a doctor] at IU hospital … and

he wrote letters requesting me not to be flying due to my chronic issues since would be disruptive

to other passengers. Simply put the insurance I asked for was not truly insurance asap says it is

ticket protection where if someone wishes to cancel their flight or flights a medical letter from dr

and or hospital is required so they can negotiate with the airlines so they say ...I told them it was

not insurance as i asked for I argue it is just another donation to them ! I only wish for a full

refund...I requested refund on July 26th ...my flights start August 31st and I was to return home

September 26th ...needless to say I am not happy with this company especially about the false

insurance!"[26]

      f.     On August 30, 2023, a consumer filed a complaint with the Better Business

Bureau, stating, in part: "asap agents are thieves and sell you tickets and travel insurances they

know you cannot use. I bought 3 tickets for my kids and I … I bought the travel insurance because

they said I could use it in case of travel changes. When I got sick … and could not travel, I called

---

[25]     https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=10

[26]     https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=5

and advised them of it." ITN's response to the consumer complaint states: "Please take into consideration that ITN Travel [Care Service] is not an insurance policy but an ITN's service to assist you in getting a refund from the airline in various circumstances that can occur during your trip as well as certain other additional services. … Thank you for reaching us out!"[27]

       g.      On October 5, 2023, a consumer filed a complaint with the Better Business Bureau, stating, in part: "The agent sold me a travel care protection policy…. I clearly asked, and repeated, 'will I be able to cancel the ticket?' To which she replied yes. (I would not have purchased the ticket if they were unable to be cancelled, because I knew my medical state). So on 09/15, I purchased the first ticket for myself- $544.04 for the ticket, plus … the travel care protection: a total of $621.21. On 09/21, I purchased a second ticket for my husband: $581.95 for the ticket, plus … the travel care protection: a total of $663.42. The flight was scheduled for 10/02. Based on a medical decision, it was decided that we wouldn't be able to travel. On 09/29, I called into asap to cancel my tickets, and get my refund. The representative on the line replied "these tickets are not refundable, you can only switch to a different date." I replied, that I never asked for a policy to able to switch the tickets, I needed to fly on this specific date, or otherwise not at all. I clearly asked for a policy to cancel the tickets. When I call the agent who sold me the ticket, she doesn't answer the phone, or just transfers me to another agent. I repeatedly called the company back, explaining that I am appalled by their dishonesty; I specifically purchased a protection plan so that I would not have a problem cancelling it."[28]

---

[27]      https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=5

[28]      https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints?page=3

h.     On November 10, 2023, a consumer filed a complaint with the Better Business Bureau, stating, in part: "I bought what I thought was flight insurance but was told it was only 'travel care service' afterward. They would not refund any portion of this $1300 ticket. ...."[29]

i.     On November 21, 2023, a consumer filed a complaint with www.reviewcentre.com, stating, in part: "[I]f something goes wrong, first you will find out that the 'travel insurance' that you paid about $150 per ticket for is not really insurance but some contrived BS that is completely useless called 'travel care service.' I bought 4 expensive tickets. 2 ended up not being used. 1 due to illness and 1 that was my fault but they have come up with every excuse not to help me get, at least, a partial refund."[30]

## CLASS ACTION ALLEGATIONS

101.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of three proposed classes (collectively, the "Classes") defined as follows:

**Nationwide Travel Companion Class:** all persons residing in the United States who, within the applicable limitations period: (a) entered into a Travel Care Service agreement with ITN covering themselves and one or more travel companions, and (b) did not receive a Companion Refund from ITN after ITN provided a Primary Refund to one or more of their travel companions (the "Nationwide Travel Companion Class").

**New York Travel Companion Class:** all persons residing in the state of New York who, within the applicable limitations period: (a) entered into a Travel Care Service agreement

---

[29] https://www.bbb.org/us/ca/south-san-francisco/profile/travel-agency/asap-tickets-1116-72752/complaints

[30] https://www.reviewcentre.com/reviews262075.html

with ITN covering themselves and one or more travel companions, and (b) did not receive a Companion Refund from ITN after ITN provided a Primary Refund to one or more of their travel companions (the "New York Travel Companion Class").

**New York Purchaser Class:** all persons residing in the state of New York who, within the applicable limitations period, purchased coverage under the Travel Care Service agreement from ITN (the "New York Purchaser Class").

Plaintiff reserves the right to modify, change, or expand the definition of any Class or Classes based upon discovery and further investigation.

102.     Specifically excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

103.     This class action is brought pursuant to Rule 23(b)(2) because ITN has acted or refused to act on grounds generally applicable to all the members of the Classes, thereby making final injunctive relief or declaratory relief concerning the Classes appropriate.

104.     This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to the claims of Plaintiff and members of the Classes predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

105.     ITN has subjected Plaintiff and the members of the Class to the same unlawful practices and harmed them in the same manner. The conduct described above is ITN's standard business practice.

106.   <u>Numerosity</u>: Individual members of the Classes are so numerous that joinder of all members in a single action is impracticable. ITN sells over 50,000 air tickets and package holidays monthly and, upon information and belief, has sold and entered into thousands of Travel Care Service agreements during the class period. While the exact number of class members is presently unknown, the exact number of class members, as well as the class members' names and addresses, can be identified in ITN's business records.

107.   <u>Typicality</u>: Plaintiff's claims are typical of those of all members of the Classes in that, in every case, (a) with respect to Count 1 for breach of contract, ITN breached a standardized Travel Care Service agreement by refusing to make a Companion Refund after providing a Primary Refund to another individual covered under the same agreement; (b) with respect to Counts 2 and 3 for unjust enrichment and violation of New York General Business Law § 349, ITN engaged in the same deceptive acts and practices with respect to marketing and selling a premium travel "protection" product that promises companion refunds in exchange for a fee, while omitting that, in practice, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested; (c) with respect to Counts 4 and 5 for violation of New York General Business Law §§ 349-350, ITN engaged in the same false advertising and deceptive acts and practices with respect to its marketing and sale of the Travel Care Service agreement as "not insurance," and its systematic practice of denying refunds on the grounds that the Travel Care Service agreement is "not insurance."

108.   <u>Commonality/Predominance</u>: Common questions of law and fact exist as to all members of the Classes, including, but not limited to: (a) whether, under the standardized language in the Travel Care Service agreement, Plaintiff and the Class members are owed a Companion Refund; (b) whether ITN breached its Travel Care Service agreements with Plaintiff and the Class

27

members by failing to make a Companion Refund; (c) whether ITN was unjustly enriched by its practice of marketing and selling a premium travel "protection" product that promises companion refunds in exchange for a fee, while omitting that, in practice, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested; (d) whether ITN's conduct as described herein was deceptive under New York General Business Law § 349; (e) whether ITN falsely advertised the Travel Care Service agreement as "not insurance"; (f) whether ITN's representations and omissions were material to a reasonable consumer; and (g) whether ITN charged a price premium for the Travel Care Service agreement relative to other travel insurance products.

109.   <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of class members and has no interests antagonistic to those of class members. Plaintiff retained attorneys experienced in commercial litigation, breach of contract, and the prosecution of class actions, and Plaintiff's counsel intends to prosecute this action vigorously.

110.   <u>Injunctive/Declaratory Relief</u>:  The elements of Rule 23(b)(2) are met. Declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to (a) improperly and deceptively deny Companion Refunds under the terms of its Travel Care Service agreement, (b) market and sell a premium travel "protection" product that promises companion refunds in exchange for a fee, while omitting that, in practice, ITN systematically fails to make companion refunds as a matter of course and regularly denies such refunds when requested, and (c) market and sell the Travel Care Service agreement as "not insurance" and systematically deny refunds on

those grounds. Plaintiff seeks a declaration on behalf of all Class members that ITN's conduct breaches the standardized terms of its Travel Care Service agreement, that ITN has wrongfully kept monies paid for the Travel Care Service agreement, and that ITN's conduct violates New York General Business Law §§ 349-350.

111.   <u>Predominance and Superiority</u>: A class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual class members are relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for class members to seek individual redress for the wrongs done to them. Absent a class action, class members will continue to incur damages, and Defendant's misconduct will continue without remedy.

112.   Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

113.   Plaintiff reserves the right to seek certification of Rule 23(c)(4) common issues related to Defendants' knowledge, conduct, and duties.

## CAUSES OF ACTION

### COUNT I
**Breach of Contract**
**(On Behalf Of Plaintiff And The Nationwide Travel Companion Class And, In The Alternative, The New York Travel Companion Class)**

114.   All of the above allegations are incorporated herein by reference.

115.   Plaintiff was a party to the Travel Care Service Agreement as described herein.

116.    All members of The Nationwide Travel Companion Class and The New York Travel Companion Class (for purposes of this Count, "Class members") were parties to a Travel Care Service Agreement containing materially identical terms.

117.    The Travel Care Service Agreement is a valid contract between ITN, on the one hand, and Plaintiff and every Class member, on the other.

118.    Another individual covered under the same Travel Care Service Agreement as Plaintiff and every Class member made a claim for a refund determined by ITN to be a valid refund under the agreement.

119.    ITN, by paying a refund to another individual covered under the same Travel Care Service Agreement, determined that the refund met all terms and conditions of the Travel Care Service Agreement, and was required to be paid under the Travel Care Service Agreement.

120.    Pursuant to the aforementioned uniform contractual provisions, upon the payment of the Primary Refund to another individual covered by the same Travel Care Service Agreement, Plaintiff and every Class member were also entitled to an equivalent Companion Refund.

121.    ITN did not pay the required Companion Refund to Plaintiff and every Class member.

122.    ITN's failure to pay the promised Companion Refund constitutes a material breach of the Travel Care Service Agreement with Plaintiff and every Class member.

123.    As a result of said breaches, Plaintiff and every Class member suffered damages in the amount of the refunds not paid by ITN.

**COUNT 2**
**Unjust Enrichment**
**(On Behalf Of Plaintiff And The Nationwide Travel Companion Class And, In The Alternative, The New York Travel Companion Class)**

124.    All of the above allegations are incorporated herein by reference.

125.    This Count is brought in the alternative to Count 1.

126.    Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid to Plaintiff and other members of The Nationwide Travel Companion Class and The New York Travel Companion Class.

127.    This is particularly true where, as here, Defendant represented to consumers that the Travel Care Service provided Companion Refunds, while maintaining a practice of systematically denying refunds to companions claiming that the refunds available under the Travel Care Service "appl[y] only to the sick passenger."

128.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## COUNT 3
**Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349, *et seq.*)**
**Through Deceptive Conduct Regarding Travel Companion Refunds**
**(On Behalf Of Plaintiff And The New York Travel Companion Class)**

129.    All of the above allegations are incorporated herein by reference.

130.    Plaintiff brings this count under New York law, individually and on behalf of the New York Travel Companion Class, against ITN.

131.    Plaintiff and all members of the New York Travel Companion Class are "persons" under N.Y. Gen. Bus. Law § 349(h).

132.    ITN is a "person," "firm," "corporation," or "association" under N.Y. Gen. Bus. Law § 349.

133.    The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

134.     The Travel Care Service agreement is a consumer-oriented, standard-form product that is designed and intended by ITN to be purchased by the public at large in the State of New York.

135.     As part of ITN's standard business practice, the Travel Care Service agreement is marketed and offered for sale—as an additional or "upsell" product—to all consumers in the State of New York who purchase airline tickets from ITN.

136.     The standardized terms making up the Travel Care Service agreement are consumer-oriented in that they are (a) presented as a standard and additional product offered for sale as part of a routine consumer transaction, (b) offered and available to consumers at large, and (c) regularly used by ITN in the inducement of individual consumers in the market for airline tickets and travel insurance.

137.     ITN's practices, as described throughout the complaint, harm the public at large in a material way by misleading consumers who purchase the Travel Care Service agreement from ITN.

138.     In the course of its business, ITN, through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the coverage and refunds available under the terms of the Travel Care Service agreement.

139.     ITN marketed and sold the Travel Care Service agreement as a premium travel "protection" product that packaged Companion Refunds with the Primary Refunds payable to a sick or hospitalized traveler.

140.     By representing to consumers that the Travel Care Service agreement provided Companion Refunds, while maintaining a practice of systematically denying refunds on the

grounds that the Travel Care Service agreement is "not insurance," and that the refunds available under the Travel Care Service agreement "appl[y] only to the sick passenger," ITN engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

141.    ITN had an ongoing duty to Plaintiff and members of the New York Travel Companion Class to refrain from deceptive practices under the New York DAPA in the course of ITN's business, and a duty to disclose that—notwithstanding ITN's marketing and the standardized terms of the Travel Care Service agreement—ITN systematically fails to pay Companion Refunds, and systematically misrepresents the coverage and refunds available under the terms of the Travel Care Service agreement.

142.    ITN's failure to pay Companion Refunds as a matter of course, and its practice of denying refunds on the grounds that the Travel Care Service agreement is "not insurance" and that the refunds available under the Travel Care Service agreement "appl[y] only to the sick passenger," were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers regarding the coverage and refunds available under the terms of the Travel Care Service agreement.

143.    ITN's representations to consumers regarding the coverage and refunds available under the terms of the Travel Care Service agreement were material to the decisions of a reasonable consumer, including Plaintiff and members of the New York Travel Companion Class, to purchase trip protection coverage under the terms of the Travel Care Service agreement. Plaintiff and members of the New York Travel Companion Class were exposed to and reasonably relied on those representations of material fact in deciding to purchase trip protection coverage under the terms of the Travel Care Service agreement.

144.    As a direct and proximate result of ITN's deceptive practices, Plaintiff and members of the New York Travel Companion Class have sustained economic injury and loss—either by failing to receive a refund to which they were entitled, purchasing trip protection coverage they would not have purchased, or paying more than they otherwise would have paid for trip protection coverage under the terms of the Travel Care Service agreement.

145.    ITN intended for Plaintiff and members of the New York Travel Companion Class to rely on their misrepresentations, omissions, and concealment, which they did by purchasing trip protection coverage under the Travel Care Service agreement at the prices they paid—which were higher than the average market price of travel insurance coverage—believing that Companion Refunds would be paid under the terms of the agreement and that, at the time a Primary Refund was approved and paid, ITN would not misrepresent the coverage and refunds available under the terms of the Travel Care Service agreement and improperly withhold payment of a Companion Refund.

146.    Had they known that ITN systematically failed to pay Companion Refunds as a matter of course, and had a practice of misrepresenting the coverage and refunds available under the terms of the Travel Care Service agreement and improperly withholding payment, Plaintiff and members of the New York Travel Companion Class would not have purchased trip protection coverage under the terms of the Travel Care Service agreement, or would have paid significantly less for that coverage.

147.    ITN charged a price premium for the Travel Care Service agreement relative to the average cost of travel insurance.

148.    The price premium ITN charged for the Travel Care Service agreement further suggested to a reasonable consumer that the Travel Care Service was a premium travel protection

product that packaged Companion Refunds with the Primary Refunds payable to sick or hospitalized traveler.

149.   In reality, the Travel Care Service agreement was worth less than other travel insurance products, as ITN had an undisclosed and systematic practice of denying refunds precisely on the grounds that the agreement was "not insurance."

150.   ITN's unlawful acts and practices complained of herein affect the public interest.

151.   Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiff and members of the New York Travel Companion Class seek an order enjoining the above-described deceptive acts or practices and awarding actual or statutory damages, punitive damages, and any other just and proper relief available under the New York DAPA against Defendant.

<u>**COUNT 4**</u>
**Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349,** *et seq.***)**
**Through False And Deceptive Statements Regarding The Insurance Nature Of**
**The Travel Care Services Agreement**
**(On Behalf Of Plaintiff And The New York Purchaser Class)**

152.   All of the above allegations are incorporated herein by reference.

153.   Plaintiff brings this count under New York law, individually and on behalf of the New York Purchaser Class, against ITN.

154.   Plaintiff and all members of the New York Purchaser Class are "persons" under N.Y. Gen. Bus. Law § 349(h).

155.   ITN is a "person," "firm," "corporation," or "association" under N.Y. Gen. Bus. Law § 349.

156.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

157.   The Travel Care Service agreement is a consumer-oriented standard form product that is designed and intended by ITN to be purchased by the public at large in the State of New York.

158.   As part of ITN's standard business practice, the Travel Care Service agreement is marketed and offered for sale—as an additional or "upsell" product—to all consumers in the State of New York who purchase airline tickets from ITN.

159.   The standardized terms making up the Travel Care Service agreement are consumer-oriented in that they are (a) presented as a standard and additional product offered for sale as part of a routine consumer transaction, (b) offered and are available to consumers at large, and (c) regularly used by ITN in the inducement of individual consumers in the market for airline tickets and travel insurance.

160.   ITN's practices, as described throughout the complaint, harm the public at large in a material way by misleading consumers who purchase the Travel Care Service agreement from ITN.

161.   In the course of its business, ITN, through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the insurance nature of the Travel Care Service agreement, ITN's lack of a license to sell insurance in New York, the coverage and refunds available under the terms of the Travel Care Service agreement, and ITN's systematic practice of denying refunds on the grounds that the Travel Care Service agreement is "not insurance."

162.   ITN told consumers that the Travel Care Service agreement is a "not insurance," but rather a travel "services" agreement. In reality, the Travel Care Service agreement is an

unlicensed and overpriced travel insurance product, sold with none of the regulatory protections and disclosures required of insurance products.

163.    ITN's representations and omissions to consumers—regarding ITN's lack of a license to sell insurance in New York, the coverage and refunds available under the terms of the Travel Care Service agreement, and ITN's systematic practice of denying refunds on the grounds that the Travel Care Service agreement is "not insurance"—were material to the decisions of of a reasonable consumer, including Plaintiff and members of the New York Purchaser Class, to purchase trip protection coverage under the terms of the Travel Care Service agreement.

164.    As a direct and proximate result of ITN's deceptive practices, Plaintiff and members of the New York Purchaser Class have sustained economic injury and loss.

165.    Had they known that ITN was misrepresenting the insurance nature of the Travel Care Service agreement, that ITN lacked a license to sell insurance in New York, that ITN systematically mispresented the coverage and refunds available under the terms of the Travel Care Service agreement and systematically denied refunds on the grounds that the Travel Care Service agreement is "not insurance," Plaintiff and members of the New York Purchaser Class would not have purchased trip protection coverage under the terms of the Travel Care Service agreement, or would have paid significantly less for that coverage.

166.    ITN charged a significant price premium for the Travel Care Service agreement relative to the average cost of travel insurance.

167.    The price premium ITN charged for the Travel Care Service agreement further suggested to a reasonable consumer that the Travel Care Service was a premium travel "protection" product—that was better and worth more than an average travel insurance policy—and that the

"services" offered thereunder would protect covered travelers from the perils described in the agreement, including unexpected trip cancellation.

168.     In reality, the Travel Care Service agreement was worth less than other travel insurance products, as ITN had an undisclosed and systematic practice of denying refunds precisely on the grounds that the agreement was "not insurance."

169.     ITN's unlawful acts and practices complained of herein affect the public interest.

170.     Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiff and members of the New York Purchaser Class seek an order enjoining the above-described deceptive acts or practices and awarding actual or statutory damages, punitive damages, and any other just and proper relief available under the New York DAPA against Defendant.

## COUNT 5
**Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350, *et seq.*)**
**Through False Statements Regarding The Insurance Nature Of**
**The Travel Care Service Agreement**
**(On Behalf Of Plaintiff And The New York Purchaser Class)**

171.     All of the above allegations are incorporated herein by reference.

172.     Plaintiff brings this count under New York law, individually and on behalf of the other members of the New York Purchaser Class, against ITN.

173.     Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

174.     The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

175.     The Travel Care Service agreement is a consumer-oriented, standard-form product that is designed and intended by ITN to be purchased by the public at large in the State of New York.

176.    As part of ITN's standard business practice, the Travel Care Service agreement is marketed and offered for sale—as an additional or "upsell" product—to all consumers in the State of New York who purchase airline tickets from ITN.

177.    The standardized terms making up the Travel Care Service agreement are consumer-oriented in that they are (a) presented as a standard and additional product offered for sale as part of a routine consumer transaction, (b) offered and are available to consumers at large, and (c) regularly used by ITN in the inducement of individual consumers in the market for airline tickets and travel insurance.

178.    ITN's practices, as described throughout the complaint, harm the public at large in a material way by misleading consumers who purchase the Travel Care Service agreement from ITN.

179.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and the standardized terms of the Travel Care Service agreement, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them, to be untrue and misleading to consumers, including Plaintiff and members of the New York Purchaser Class.

180.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the insurance nature of the Travel Care Service agreement, ITN's lack of a license to sell insurance in New York, and the coverage and refunds available under the terms of the Travel Care Service agreement.

181.   Defendants had an ongoing duty to Plaintiff and members of the New York Purchaser Class to refrain from false advertising under the New York FAA in the course of their business.

182.   By misrepresenting the Travel Care Service agreement as a travel "services" agreement that was "not an insurance policy," and pricing that agreement at rates that far exceeded the average price of travel insurance, Defendants led consumers to believe they were purchasing a premium form of non-insurance travel "protection"—that was better and worth more than an average travel insurance policy—when in fact consumers were purchasing a travel insurance contract at above-market rates from an unlicensed seller, sold with none of the regulatory protections and disclosures required of insurance products.

183.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material to the decisions of Plaintiff and members of the New York Purchaser Class to purchase the Travel Care Service agreement. Plaintiff and members of the New York Purchaser Class were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and reasonably relied on them in deciding to purchase the Travel Care Service agreement.

184.   As a direct and proximate result of ITN's false statements, Plaintiff and members of the New York Purchaser Class have sustained economic injury and loss—either by purchasing trip protection coverage they would not have purchased, or paying more than they otherwise would have paid for trip protection coverage under the terms of the Travel Care Service agreement.

185.   Had they known the truth about the insurance nature of the Travel Care Service agreement, ITN's lack of a license to sell insurance in New York, and ITN's systematic practice of denying covered refunds on the grounds that the Travel Care Service agreement is "not

insurance," Plaintiff and members of the New York Purchaser Class would not have purchased the Travel Care Service agreement or would have paid significantly less for it.

186.    ITN charged a significant price premium for the Travel Care Service agreement relative to the average cost of travel insurance.

187.    The price premium ITN charged for the Travel Care Service agreement further suggested to a reasonable consumer that the Travel Care Service was a premium travel "protection" product—that was better and worth more than an average travel insurance policy—and that the "services" offered thereunder would protect covered travelers from the perils described in the agreement, including unexpected trip cancellation.

188.    In reality, the Travel Care Service agreement was worth less than other travel insurance products, as ITN had an undisclosed and systematic practice of denying refunds precisely on the grounds that the agreement was "not insurance."

189.    ITN's unlawful acts and practices complained of herein affect the public interest.

190.    Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff and members of the New York Purchaser Class seek an order enjoining the above acts or practices and awarding actual or statutory damages, punitive damages, and any other just and proper relief available under the New York FAA against ITN.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiff as Class Representative of the Classes;

C.    Name Plaintiff's counsel as Class Counsel for the Classes;

D.      Award compensatory damages in amounts owed under the Travel Care Service agreements and/or statutory damages available under the above-referenced statutes;

E.      Declaring that Defendant has wrongfully kept monies paid for the Travel Care Service agreement;

F.      Requiring that Defendant disgorge amounts wrongfully obtained from its sale of the Travel Care Service agreement;

G.      For injunctive relief to prevent continuation of this illegal practice and for other injunctive relief as is proven appropriate in this matter;

H.      For all other damages according to proof, including treble damages available under applicable law;

I.      Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

J.      Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

K.      Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  January 4, 2024.

                                        */s/ Scott M. Tucker*
                                        **CHIMICLES SCHWARTZ KRINER &**
                                        **DONALDSON-SMITH LLP**
                                        Robert J. Kriner, Jr. (Del. Bar No. 2546)
                                        Scott M. Tucker (Del. Bar No. 4925)
                                        2711 Centerville Road, Suite 201
                                        Wilmington, DE 19808
                                        Tel: 302-656-2500
                                        Fax: 302-656-9053
                                        RobertKriner@chimicles.com

ScottTucker@chimicles.com

**DWOSKIN WASDIN LLP**
Nicholas F. Wasdin (PHV forthcoming)
110 N. Wacker
Chicago, IL 60606
Tel.: (312) 343-5361
nwasdin@dwowas.com

*Attorneys for Plaintiff and the putative Classes*