IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANDRA MAGGI, individually and
on behalf of all others similarly situated,

   *Plaintiff,*

  v.

           No. 24-cv-00009-SB

INTERNATIONAL TRAVEL
NETWORK, LLC

   *Defendant.*

---

Robert J. Kriner, Jr., Scott M. Tucker, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, Delaware; Nicholas F. Wasdin, DWOSKIN WASDIN, LLP, Chicago, Illinois.

                *Counsel for Plaintiff.*

David E. Wilks, Donald C. Vavala, III, WILKS LAW, LLC, Wilmington, Delaware; Jesse T. Conan, Jordan E. Stern, BECKER, GLYNN, MUFFLY, CHASSIN & HOSINKI LLP, New York, New York.

              *Counsel for Defendant.*

---

### MEMORANDUM OPINION

June 11, 2026

BIBAS, *Circuit Judge*, sitting by designation.

Clicking "I agree" without reading the terms and conditions is understandable, but does not remove contractual obligations. Nor does having someone else click "I agree" for you. Sandra Maggi bought plane tickets with the help of her friend, Kathy

Martin. Martin agreed to terms and conditions that mandated arbitration and waived class claims. After discovery, Maggi fails to persuade me that she is not bound by those terms, so I grant International Travel Network's motion to compel arbitration.

### I. MAGGI GETS HELP BUYING PLANE TICKETS AND TRAVEL CARE

Sandra Maggi and her husband wanted to visit their son, who was stationed in Italy. Maggi had never bought a plane ticket, so she enlisted Martin's help. D.I. 48-1 at 12, 14. Martin recommended booking through International Travel Network, a travel agency that sells tickets from third-party airlines, travel packages, and add-ons to consumers. *Id.* at 12–13; D.I. 1 (Compl.) ¶ 1. Maggi agreed to use the agency, so Martin called on Maggi's behalf. D.I. 48-1 at 14; D.I. 48-2 at 16–17, 32.

For an hour, Martin spoke with a travel agent, who helped her buy the tickets online. D.I. 48-5 at 42. While she was on the phone, Maggi was generally present and conferred with her, though Maggi left the room at times. D.I. 48-1 at 16; D.I. 48-2 at 17, 23. The travel agent walked Martin through the online buying process, including the agency's "Travel Care Service" product. D.I. 48-9 at 28. Martin called it "insurance." D.I. 48-9 at 27. But the website says, "Travel Care Service is *not* an insurance policy but … [a] service to assist you in getting a refund from the airline in various circumstances that can occur during your trip." D.I. 48-3 at 10 (emphasis added).

After conferring with Maggi, Martin agreed to add the Travel Care Service when she bought the plane tickets for both Maggi and her husband. Compl. ¶ 7. She clicked a button on the agency's website saying she had "read and agreed to the Terms and Conditions" for the service. D.I. 48-3 at 10; D.I. 48-2 at 77; D.I. 48-9 at 34. Before paying, Martin again affirmed that she "read, understood and accepted present

Terms and Conditions" on another webpage. D.I. 48-3 at 12; D.I. 48-2 at 73, 78. International Travel calls this final set of terms and conditions the "General Terms and Conditions." D.I. 44 at 14.

Those final terms and conditions provide that "[t]he exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website shall be BINDING ARBITRATION," explaining to the customer that "YOU GIVE UP YOUR RIGHT TO GO TO COURT" and "YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION OR OTHER CLASS PROCEEDING." D.I. 48-3 at 18. Signatories who do not want to be bound may email International Travel within 30 days to opt out. *Id.* Maggi and Martin did not. D.I. 46 at 5.

Just before Maggi's trip, her husband was told that he needed heart surgery and could not travel. Compl. ¶ 8. Maggi stayed behind too. *Id.* ¶ 9. Because they were "unable to take their trip due to sickness," Maggi requested a 50% refund using the Travel Care Service. *Id.* ¶¶ 5, 9. International Travel refunded her husband's ticket, but not Maggi's. *Id.* ¶ 10.

So Maggi sued International Travel for breach of contract, unjust enrichment, deceptive and unlawful business practices, and unlawfully selling insurance. *Id.* ¶ 13. International Travel moved to dismiss and compel arbitration, but it was not clear from the face of the complaint that the parties had agreed to arbitrate, so they went to limited discovery on the existence of an arbitration agreement. *Maggi v. Int'l Travel Network, LLC*, 2025 WL 929401, at *1–2 (D. Del. Mar. 27, 2025). International Travel

3

again moved to compel arbitration, and Maggi cross-moved for summary judgment on the issue of insurance. D.I. 43; D.I. 49. I will grant International Travel's motion and deny Maggi's as moot.

## II. MAGGI AGREED TO ARBITRATE HER TRAVEL-CARE CLAIMS

I apply the same standard to International Travel's motion to compel arbitration that I would to a motion for summary judgment. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). So I decide arbitrability "only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288–89 (3d Cir. 2017); Fed. R. Civ. P. 56(a).

As I explained before, to decide International Travel's motion, I must "consider (1) whether there is a valid agreement to arbitrate between the parties, and if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023) (internal quotation marks omitted). "[W]e look to applicable state law to determine whether the parties agreed to arbitrate." *Aliments*, 851 F.3d at 289. The agreement's California choice-of-law provision likely governs the agreement to arbitrate, but the parties discuss New York and Delaware law too. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (Alito, J.) (looking to the agreement's choice of law); D.I. 48-3 at 18. The parties (and I) see no substantive difference among the laws of California, New York, and Delaware on this issue. D.I. 44 at 20 n.2; D.I. 47 at 15, 17.

**A. Martin signed the arbitration agreement for Maggi**

Maggi argues that she did not agree to arbitrate her disputes because she did not "personally complete … receive, read, or assent to the Terms and Conditions containing the arbitration provision," nor did the travel agent mention arbitration to her or Martin. D.I. 47 at 13–14. But this attempt to wriggle out of the contract fails. Maggi asked Martin to help her and empowered Martin to buy tickets for her. Maggi cannot now pick and choose which parts of those contracts she wishes to be bound by.

A principal can be bound by an agent who has actual or apparent authority to make contracts on behalf of the principal. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Caribbean Sun Airlines Inc. v. Halevi Enters. LLC*, 339 A.3d 24, 35 (Del. 2025) (quoting Restatement (Third) of Agency § 201 (2006)). "By contrast, apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.* (same) (internal quotation marks omitted). International Travel bears the burden to prove that Martin was Maggi's "actual or ostensible agent." *Kinder v. Capistrano Beach Care Ctr., LLC*, 308 Cal. Rptr. 3d 631, 636 (Ct. App. 2023).

International Travel met its burden. Maggi admitted that Martin had filled out the online forms on her behalf because she "do[es not] buy anything online." D.I. 48-1 at 110–111. And Martin did so "to purchase [Maggi's] tickets to Naples and … travel

5

care service." *Id.* at 112. Martin gave the Maggis' email to the customer-service representative. D.I. 48-2 at 43. She said that no one else but her could have clicked "I agree" to the terms and conditions. *Id.* at 53, 73–74. And she agreed that she was "buying Travel Care Services for the Maggi's [sic]" and had "clicked [the agreement with terms and conditions box] on behalf of the Maggis." *Id.* at 77–78; *see also id.* at 16.

Martin had reason to believe that Maggi wanted this. She asked Maggi's preference, then "inferred permission" to agree to the terms and conditions from Maggi's "authorization to buy Travel Care Services for them." *Id.* at 79–80. Because Martin reasonably believed that Maggi wanted her to agree to the terms and conditions, she acted with actual authority when she signed them on her behalf. *Caribbean Sun Airlines*, 339 A.3d at 35.

Even if Martin was mistaken, it was reasonable for International Travel (and their agent) to think that Martin had apparent authority. Though Maggi was not the one on the phone, she was present and instructing Martin. D.I. 48-2 at 79. International Travel must use "ordinary prudence and reasonable diligence" to "make a preliminary investigation as to the agent's apparent authority and additional investigations if the facts so warrant." *Finnegan Const. Co. v. Robino-Ladd Co.*, 354 A.2d 142, 145 (Del. Super. Ct. 1976) (first quotation); *Int'l Boiler Works Co. v. Gen. Waterworks Corp.*, 372 A.2d 176, 177 (Del. 1977) (second one).

It was reasonable for the travel agent to think that Martin was buying tickets with Maggi's full authorization. For one, Martin explicitly said she was buying for the

Maggis. D.I. 48-7 at 3–4. For another, Maggi was present for much of the time, giving clear directions that Jamie could hear. D.I. 48-9 at 34. And Martin posed many of her questions as "we," identifying herself with Maggi. *See, e.g., id* at 3. Besides, on the call, Martin told the agent that she would "just ask them about the insurance," then asked if Maggi "want[ed] that if they have it." *Id.* at 27–28. After some discussion, Martin told the agent that "*we're* going to take that." *Id.* at 29 (emphasis added). It was reasonable for International Travel "to believe that the agent had the authority to bind the principal." *Rogers v. Roseville SH, LLC*, 290 Cal. Rptr. 3d 760, 767 (Ct. App. 2022).

Maggi objects that she never gave Martin authority to agree to arbitration, just to buy tickets and insurance. D.I. 47 at 14. She relies on *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, but it offers little support. 636 F.2d 51 (3d Cir. 1980). There, a manufacturing plant manager signed a receipt-of-delivery that had an arbitration clause. But "the production manager had limited authority and would not ordinarily be the company agent to execute contracts on behalf of the corporation," and so arguably "did not have the actual or apparent authority to execute the contract." *Id.* at 55. The same is not true of Martin, whom Maggi enlisted to buy tickets and "insurance" on her behalf.

**B. The Travel Care Service relates to Maggi's ticket purchase**

Maggi presses another reason that she is not bound: The arbitration provision is in the final set of terms and conditions presented before payment for the entire purchase, while the Travel Care Service terms and conditions have no arbitration clause. D.I. 47 at 15. And she dismisses International Travel's label of "General Terms and

Conditions" as concocted for litigation. *Id.* at 18. So, she says, she may have to arbitrate some claims, but not ones arising out of the Travel Care Service.

Yet the plain text of the arbitration provision covers Maggi's claims. When one agreement has an arbitration provision and another does not, disputes about the agreement without the provision are not presumptively arbitrable. *See Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64–65 (3d Cir. 2018). Recall that Maggi agreed to arbitrate any dispute or claim "arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website." D.I. 48-3 at 18.

Maggi may be right that the term "General Terms and Conditions" was invented to protect the agency in this type of case. D.I. 47 at 18. But it accurately describes how the terms and conditions operate. As customers go through International Travel's website, they are presented with several possible add-ons, including Travel Care, Vacation Planner, and Price Drop Guarantee services. D.I. 48-3 at 10–11. Each has its own terms and conditions that customers must agree to if they add that product. *Id.*; D.I. 48-13 at 6–7. The airline tickets also have their own set of "Fare Rules" and "Liability Limitations." *Id.*; D.I. 48-3 at 9, 12. Yet no matter which flights and products the customers add or decline, they must agree to the final set of terms and conditions. In this way, the final (or general) terms and conditions act as an umbrella agreement, applying to International Travel's entire service.

The broad construction of the arbitration clause confirms what the structure suggests: "[A]ny dispute or claim arising out of or relating to this Agreement …, the Service, or the Website" covers the sum total of Maggi's interaction with International

Travel. D.I. 48-3 at 18. *See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (reasoning that an arbitration agreement covering "any controversy, claim or dispute" is "broad"). The Travel Care Service plainly relates to Maggi's buying airline-ticket services. They were bought at the same time in the same transaction, and indeed Travel Care only makes sense if there are tickets that it can service. D.I. 48-2 at 74; D.I. 46 at 2.

The cases that Maggi cites in opposition are distinguishable on that score. In *Cup*, the agreement with the arbitration provision was expressly not incorporated into the operative agreement. 903 F.3d at 64. Next, in *Goodrich Cargo Systems v. Aero Union Corp.*, the "umbrella contract" did not have an arbitration clause while one of the subsidiary agreements did. 2006 WL 3708065, at *3 (N.D. Cal. Dec. 14, 2006). If they had "placed an arbitration clause in the umbrella agreement" (as here) the outcome would have been different. *Id.* And in the final two cases, the contracts were entirely separate, and thus the dispute was not "relat[ed] to th[e] Agreement." D.I. 48-3 at 18; *see Snyder v. Wells Fargo Bank, N.A.*, 2011 WL 6382707, at *4 (S.D.N.Y. Dec. 19, 2011) (reasoning that "the two contracts are not intertwined or integral to each other, and all claims … arising under each can be pursued independently"); *Cap. Grp. Commc'ns Inc v. Xedar Corp*, 2013 WL 4013711, at *2 (N.D. Cal. Aug. 5, 2013) (where the arbitration clause was in a consulting agreement, but "Plaintiffs' claims [we]re all premised on Defendants having fraudulently concealed or failed to disclose material facts in connection with the share repurchase transactions"). Thus, the arbitration provision expressly covers Maggi's dispute.

There is no "genuine issue of material fact" that Maggi made one purchase for two products—tickets and travel service—and that Martin agreed to the final terms and conditions with arbitration clause on Maggi's behalf. *Aliments*, 851 F.3d at 288. That is enough.

### III. THE ARBITRATION PROVISION IS VALID

Finally, Maggi argues that the arbitration provision is invalid as an unconscionable clause in an illegal insurance contract. D.I. 47 at 23, 25. The first claim fails and the second would not change my answer, so I need not reach it.

#### A. The clause is not unconscionable

A contract is unenforceable if it is substantively and procedurally unconscionable: "if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019). The arbitration clause was part of a clickwrap agreement, where the customer takes affirmative action (clicking) to agree to the terms. Maggi says the travel agent knew that she had not read the terms and conditions and should have alerted her to the arbitration clause. D.I. 47 at 24.

Yet the law does not require that much. "Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law." *Doe v. Massage Envy Franchising, LLC*, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020). And ignorance does not excuse noncompliance with agreed-upon terms. *See Weissman v. Revel Transit, Inc.*, 217 A.D.3d 430, 430 (N.Y. App. Div. 2023) ("Although plaintiff may have elected not to use the hyperlinks to view the agreement or terms of service, he was on inquiry notice and thus bound by their respective mandatory arbitration

10

provisions ….”). So a clear lack of actual notice does not suffice for procedural unconscionability.

Plus, the arbitration clause let Maggi opt out, but she never did so. D.I. 48-3 at 18; D.I. 46 at 5. "The Ninth Circuit has repeatedly held that similar opt-out procedures foreclose claims of procedural unconscionability." *Puntillo v. Int'l Travel Network, LLC*, 2026 WL 1257755, at *4 (N.D. Cal. May 7, 2026) (granting the motion to compel arbitration in a nearly identical case).

For substantive unconscionability, Maggi argues that the waiver is one-sided. D.I. 47 at 25. Yet the arbitration clause plainly applies to both sides equally. D.I. 48-3 at 18. Not even equally, for it gives the consumer "one exception," letting her bring "an individual claim … in a small-claims court of competent jurisdiction." *Id.* So both substantive and procedural unconscionability fail.

## B. Whether the contract is for insurance does not change the arbitration clause's validity or interpretation

Finally, Maggi moved for summary judgment on the issue of insurance. D.I. 49. This is one of her core claims against International Travel, so it is part of the merits of the dispute for the arbitrator to resolve. Compl. ¶ 13; *see also NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate.").

Maggi also urges that whether Travel Care is insurance matters for two other reasons: Because some state laws make arbitration and foreign-choice-of-law provisions illegal in insurance contracts, I should not interpret the arbitration provision to

cover Travel Care disputes, and if I do, the provision is substantively unconscionable. D.I. 47 at 19, 25. But "arbitration is simply a matter of contract between the parties," and I "do not consider extrinsic evidence unless [I] find that the text is ambiguous." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (first quotation); *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022) (second quotation). The provisions here are not "reasonably or fairly susceptible of different interpretations," so the insurance question has no bearing on my decision. *Id.* (second source) (internal citations omitted).

* * * * *

Just as ignorance of the law is no defense, ignorance of contract terms is usually no excuse. The arbitration clause covers Maggi's dispute, and the parties agreed to it. Maggi will have a fair chance to make her case to an arbitrator. I GRANT International Travel's motion to compel individual arbitration and DISMISS Maggi's cross-motion for summary judgment as moot.